1  JEFFER, MANGELS, BUTLER & MARMARO LLP
   MARTA M. FERNANDEZ (Bar No. 120540)
2  TRAVIS M. GEMOETS (Bar No. 174365)
   JON C. MCNUTT (Bar No. 227761)
3  1900 Avenue of the Stars, Seventh Floor
   Los Angeles, California  90067-4308
4  Telephone:  (310) 203-8080
   Facsimile:  (310) 203-0567
5
   Attorneys for Defendants GARDA CL WEST, INC.
6  (erroneously sued as Garda Cash Logistics, Inc.),
   STEPHEN STRUCK, RON RICHARDSON
7

**FILED**

10 APR 26  PM 4: 27

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

8
9              UNITED STATES DISTRICT COURT

10           SOUTHERN  DISTRICT OF CALIFORNIA

11         EDWARD J. SCHWARTZ US COURTHOUSE

12  MICHAEL BARBERI                    CASE NO. 10 CV 0880 WQH  POR

13         Plaintiff,                  **DEFENDANTS' NOTICE OF**
                                       **REMOVAL OF ACTION (28 U.S.C.**
14         v.                          **SECTION 1441(B) (FEDERAL**
                                       **QUESTION)**
15  GARDA CASH LOGISTICS, INC.,
    STEPHEN STRUCK, RON               (San Diego County Superior Court, Case
16  RICHARDSON and DOES 1-50          No. 37-2010-00051661-CU-OE-NC)
    inclusive
17
           Defendants.
18

19

20

21         TO  THE  HONORABLE  JUDGES  OF  THE  UNITED  STATES  DISTRICT

22  COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, TO PLAINTIFF

23  MICHAEL BARBERI AND TO HIS ATTORNEY OF RECORD:

24  / / /

25  / / /

26  / / /

27  / / /

28

PRINTED ON
RECYCLED PAPER
6970318v1

1    PLEASE TAKE NOTICE that defendants GARDA CL WEST, INC.
2    (erroneously sued as GARDA CASH LOGISTICS, INC.) ("Garda"), STEPHEN
3    STRUCK, and RON RICHARDSON ("Defendants") hereby remove the above-
4    entitled action, pending in the Superior Court of the State of California for the County
5    of San Diego, to the United States District Court for the Southern District of
6    California, pursuant to 28 U.S.C. Section 1331, 1441, and 1446, on the grounds that
7    the claims of Plaintiff Michael Barberi ("Plaintiff") are subject to Section 301 of the
8    Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. Section 185. The
9    following is a short and plain statement of the grounds for removal and a listing of
10   pleadings to date:

11        1.    On March 2, 2010, Plaintiff filed a complaint ("Complaint")
12   against Defendants in San Diego County Superior Court, entitled Michael Barberi v.
13   Garda Cash Logistics, Inc. Stephen Struck, and Ron Richardson, San Diego County
14   Superior Court Case No. 37-2010-00051661-CU-OE-NC.  Plaintiff's Complaint
15   contains five causes of action for negligence, civil battery, negligent infliction of
16   emotional distress, intentional infliction of emotional distress, and breach of covenant
17   of good faith and fair dealing.  In sum, Plaintiff contends that he was subject to
18   harassment by his co-workers and supervisors and forced to work in an hostile
19   environment during his employment at Garda.  Every cause of action puts at issue
20   conduct that is inextricably intertwined with matters governed by the collective
21   bargaining agreement between Plaintiff's union and Garda, thus giving rise to federal
22   preemption as explained fully below.  A true and correct copy of the Complaint is
23   attached hereto as Exhibit "1."  No sooner than March 27, 2010, Plaintiff caused the
24   Complaint to be served on Defendants.  A true and correct copy of the Summons
25   received by Defendants is attached hereto as Exhibit "2."

26        2.    The Complaint is a civil action of which this Court possesses
27   original jurisdiction pursuant to 28 U.S.C. Section 1331, and is one which may now
28   be removed to this Court pursuant to 28 U.S.C. Section 1441(b) [Federal Question],

JMBM | Jeffer Mangels Butler & Marmaro LLP

PRINTED ON
RECYCLED PAPER

6970318v1

1   in that:

2                    a.     The Collective Bargaining Agreement.

3            Plaintiff was a member of the A.T. System of Orange Association

4   ("ATSOA"), a labor organization.  At all relevant times, Plaintiff's employment at

5   Garda was governed by a collective bargaining agreement between ATSOA and

6   Garda (the "CBA").  The Grievance and Arbitration procedures set forth in Article 5

7   of the CBA, which applies to all bargaining unit employees (of which Plaintiff was

8   one), requires Plaintiff or ATSOA to grieve and enter into mandatory, binding

9   arbitration over, among other things, any "claims for harassment or discrimination or

10  hostile work environment in any form…."  A true and correct copy of the CBA

11  governing this claims is attached as Exhibit "3".

12           Article 4 of the CBA outlines the "Discharge and Discipline" policy,

13  including a detailed progressive discipline procedure.  Article 4 lists various offenses

14  which are "so severe that termination may immediately follow" including, "[a]cts of

15  sexual harassment" and "[a]assault or battery related to employment" - all of which are

16  alleged in Plaintiff's Complaint.

17                   b.     The LMRA Applies to the Claims at Issue.

18           The LMRA mandates that all civil claims for breach of a CBA or the

19  terms of employment set forth in the CBA be brought as federal causes of action.

20  The purpose of Section 301 is to avoid "the possibility that individual contract terms

21  might have different meanings under state and federal law," which "would inevitably

22  exert a disruptive influence."  *Local 174, Teamsters Union v. Lucas Flour Co.*, 369

23  U.S. 95 (1962).  The statute is a Congressional mandate to the courts to fashion a

24  federal common law to be used to address disputes arising out of labor contracts.

25  *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448 (1957).

26           "In order to preserve this uniformity, even suits based on torts, rather

27  than breach of collective bargaining agreements, are governed by federal law if their

28  evaluation is 'inextricably intertwined with consideration of the terms of [a] labor

JMBM | Jeffer Mangels<br>Butler & Marmaro ᴸᴸᴾ

PRINTED ON<br>RECYCLED PAPER

6970318v1

contract.'…Section 301 preempts all state law causes of action evaluation of which requires interpretation of a labor contract's terms." *Miller v. AT&T Network Sys.*, 850 F.2d 542 (9th Cir. 1988) (citing *Allis-Chalmers v. Lueck*, 471 U.S. 202, 213-20 (1985). Because the collective bargaining relationship is a creature of federal law, any state law or cause of action which purports to regulate any aspect of that relationship of the collective bargaining agreement is preempted by Section 301. *Allis-Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 1911 (1985).

Section 301 preempts state-law claims which are "substantially dependent on an analysis of a collective bargaining agreement" even if such a claim is based upon independent state law rights. *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000). Indeed, any claim arising under state law that necessarily requires interpretation or application of a collective bargaining agreement is preempted by Section 301. *Chmiel v. Beverly Wilshire Hotel*, Co. 873 F.2d 1283, 1285-6 (9th Cir. 1989).

The U.S. Supreme Court has held that removal on grounds of preemption by LMRA Section 301 is proper because "the preemptive force of [Section 301] is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purpose of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).

c.      Each of Plaintiff's Claims is Preempted.

Plaintiff's Complaint seeks damages for the "emotional distress, loss of his employment income and benefits, loss of his career and loss of his reputation", which were caused "[a]s a further direct and proximate result of the negligence of the Defendants and each of them." Plaintiff alleges that, in the course of his employment, he was subject to harassment and forced to work in a "hostile and uncomfortable environment". Complaint, Exh. 1, pgs. 3-5. It axiomatic that a court cannot ascertain Plaintiff's working conditions without evaluating and interpreting the primary document which dictates the terms and conditions of his employment.

PRINTED ON

RECYCLED PAPER

6970318v1

JMBM | Jeffer Mangels Butler & Marmaro LLP

1    Moreover, state law claims for emotional distress - - Plaintiff's first,

2    third and fourth causes of action - - are preempted by Section 301.  For example, the

3    elements of a prima facie case for the tort of intentional infliction of emotional

4    distress are: (1) outrageous conduct by the defendant; (2) the defendant's intention of

5    causing or reckless disregard of the probability of causing emotional distress;  (3) the

6    plaintiff's suffering severe or extreme emotional distress; and (4) actual and

7    proximate causation of the emotional distress by the defendant's outrageous conduct.

8    *Alcorn v. Anbro Engineering, Inc.*, 2 Cal.3d 493, 497-498 (1970).  It is well-

9    established that the courts must make the determination of "outrageous" conduct in

10    the context of the discipline and termination provisions set forth in the CBA.

11    *Bartholomew v. AGL Resources*,  361 F.3d 1333, 1340-1, 174 LRRM 2545 (11th Cir.

12    2004).  Since Plaintiff's alleged damages and claims are governed by the CBA and

13    require interpretation of the CBA, his case is preempted.

14    d.    Plaintiff's Claims Should be Arbitrated per the CBA.

15    An important purpose of the preemption doctrine is to give effect to

16    arbitration provision in CBA.  Employers are entitled to the benefit of these bargains.

17    Arbitration is also the most fair and efficient way to resolve these disputes using

18    arbitrators with industry-specific knowledge.   Bringing wage claims to court is

19    wasteful when the efficient contractual arbitration procedure is available.

20    Arbitration agreements are highly favored under the law.  The landmark

21    *Armendariz* decision by the California Supreme Court makes that clear.  *Armendariz*

22    *v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000) ("California

23    law, like federal law, favors enforcement of valid arbitration agreements.").

24    Here, Article 5 of the CBA provides for a specific delineated grievance

25    and arbitration procedure.  By its own terms, the grievance and arbitration provision

26    certainly applies here, applying to all claims relating to terms of employment,

27    including pay, hours, and working conditions, as well as to claims "under any federal,

28    state or local law, statute or regulation."

PRINTED ON
RECYCLED PAPER

6970318v1

1           e.     Based upon Plaintiff's complaint, it is clear that his suit

2 concerns the alleged violation of the CBA, which is a contract between an employer

3 (Garda) and a labor organization (ATSOA).  As such, Plaintiff's claims fall under the

4 purview of Section 301 of the LMRA and are properly removable to this Court.

5           3.     Defendants have filed this Notice pursuant to 28 U.S.C. Section

6 1446(b) in a timely fashion, within thirty (30) days from the time Defendants first

7 received Plaintiff's Complaint.  Until March 27, 2010, no Defendant had been served

8 with, received, or had notice of the Complaint.

9

10          WHEREFORE, Defendants remove the original action brought by

11 Plaintiff, now pending in the Superior Court of the State of California for the County

12 of San Diego, from that Court to this Court.

13

14 DATED:  April 26, 2010         JEFFER, MANGELS, BUTLER &
                                     MARMARO LLP

15                              MARTA M. FERNANDEZ
                              TRAVIS M. GEMOETS

16                              JON C. MCNUTT

17

18                              By: _____

19                                 MARTA M. FERNANDEZ
                                 TRAVIS M. GEMOETS

20                                 JON C. MCNUTT
                          Attorneys for Defendant GARDA CL WEST,

21                        INC. (erroneously sued as Garda Cash
                        Logistics, Inc.), STEPHEN STRUCK, RON

22                        RICHARDSON

23

24

25

26

27

28

PRINTED ON
RECYCLED PAPER

6970318v1

# EXHIBIT 1

ROBIN D. MONTES SBN 171332
LAW OFFICE OF ROBIN MONTES
4751 Oceanside Blvd, SUITE A
Oceanside CA 92056

Telephone: (760) 945-3148

Attorney for the Plaintiff MICHAEL BARBERI

FILED
NORTH COUNTY CI...

2010 MAR -2 AM 9: 00

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

SUPERIOR COURT STATE OF CALIFORNIA
COUNTY OF SAN DIEGO NORTH COUNTY DISTRICT

MICHAEL BARBERI
                Plaintiff,

GARDA CASH LOGISTICS INC.,
STEPHEN STRUCK, RON
RICHARDSON
 and DOES 1-50 inclusive

                Defendants.

CASE NO: 37-2010-50054561-CU-OE-NC

COMPLAINT FOR
NEGLIGENCE,
CIVIL BATTERY, NEGLIGENT
INFLICTION OF EMOTIONAL
DISTRESS, INTENTIONAL
INFLICTION OF EMOTIONAL
DISTRESS, BREACH OF THE
COVENANT OF GOOD FAITH
AND FAIR DEALING

## FIRST CAUSE OF ACTION

### (Negligence)

1.      Plaintiff MICHAEL BARBERI  (hereinafter referred to as "BARBERI") was and is now a California resident. Plaintiff BARBERI filed a complaint with FEHA and received his right to sue letter on  1-13-10.

2.      Defendant, GARDA CASH LOGISTICS INC.,(hereinafter referred to as "GARDA) upon information and belief, is now, and at all times herein mentioned was, a

1

EXHIBIT 1                                                    7

corporation duly authorized to transact business within the State of California and is and was doing business in San Diego, Riverside, and Orange County California.

3. Defendant's RON RICHARDSON (hereinafter referred to as RON) and STEPHEN STRUCK., (hereinafter referred to as STEPHEN ) upon information and belief, was and is now, and at all time herein mentioned an employee of Defendant Garda and that at all of said times herein mentioned, each was acting as the agent of the other, was acting in the course and scope of its agency with its principal, and that every act of each defendant was ratified by the others.

4. Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend his complaint to allege their true names and capacities, whether individual, corporate or other business form, when ascertained. Plaintiff is informed and believes, and thereon alleges, that each of the fictitiously-named defendants is responsible in some manner for the occurrences herein alleged, and that plaintiff's damages were proximately caused thereby, and that each of said fictitious DOES was an agent of the other.

5. Plaintiff alleges that each of the defendants was the agent of each other in all of the actions and matters set forth; and that at all of said times herein mentioned, each was acting as the agent of the other, was acting in the course and scope of its agency with its principal, and that every act of each defendant was ratified by the others.

6. At all times herein mentioned, Defendants are and were a companies licensed to conduct business in the State of California; and in their capacity as an armor transport company hired employees in various positions within the company.

7. On or about October 31, 1997, Mr. Barberi was hired with Armor Transport which became AT Systems which is now Defendant Garda. During his employment he was severely injured while in one of the armored vehicles. The result was that he endured several surgeries and metal bars were placed in his back which causes him to walk in a

2

EXHIBIT 1                                        8

very upright position and in a very stiff manner.

8.     During his employment with Defendant Garda he was subjected to pornography, women's lingerie being left where he would find it, lewd remarks and inappropriate touching. Other employees exposed themselves, made comments that were offensive and inappropriate such as while he was eating a hotdog for lunch defendant Stephen came up to him and said I have a wiener you can eat. When he took of bite of cheese he was told by defendant Stephen the only cheese he could eat was off his (Stephens) balls. At other times he put his hand on the back of Plaintiffs head and pushed it down towards his crotch.

9.     During Plaintiffs employment he had a bag of fruit and nuts at his desk. A comment was made to Plaintiff in front of and to Defendant Ron Richardson from another employee that he had a sack of nuts Plaintiff could eat. Defendant Richardson did nothing to stop the behavior but rather laughed at it.

10.     During his employment he was subjected to graphic pornography and when he complained about it he was call a "homo" "bitch", etc because he did not feel that this type of material was appropriate in the work place. The material was all around the offices in places that were open to all employees. The back portions of the armored trucks were covered with pornography. Further, the bathroom walls had pornography on them. Women's lingerie was left in the trucks and then when the Plaintiff complained about the behavior the material was left in places specific to him such as his desk, etc.

11     During his employment not only did his supervisors subject the Plaintiff to this hostile and uncomfortable environment but also encouraged other employees to behave in the same manner. When the supervisors behaved in this manner the employees joined in and the Plaintiff was subjected to a horrible situation. His supervisors and other employees requested sexual services (whether joking or not) and made comments that he was their bitch, fag, homo, etc. When Plaintiff complained about the comments and the behavior he was referred to as a worthless piece of shit.

12.     During a conversation with both defendants Stephen Struck and Ron Richardson

3

EXHIBIT 1

Plaintiff was referred to as douche bag. Mr. Struck made the comment Mr. Richardson joined into and did not stop it.

13.     When BARBERI complained/reported the incidents about the pornography and what was occurring regarding this offensive and inappropriate behavior at work the harassment escalated.  Plaintiff had no choice (due to chain of command) but to report the incidents to the very persons that were subjecting Plaintiff to the offensive conduct but also were encouraging other to do so.  Plaintiff collected some of the  physical evidence which  includes, but is not limited to pictures which show what he was subjected to. Additionally, he was repeatedly subjected to comments that he should perform sexual acts on his supervisors and other employees. Further, he was subjected to pictures that reflected homosexual acts.  He was inappropriately touched, called a faggot, disabled fag,  bitch, honey, love, pussy, fucking homo, douche bag, among others. Gestures were made indicating that he was to perform oral sex on other  men, and being told to blow them while they were grabbing their crotch. When my client reported to his branch manager the behavior that he was being subjected to his branch manager  replied "so whose cock did you suck".

14.     As a direct and proximate result of  the negligence of  Defendants, and each of them Plaintiff was subjected to an intolerable environment and deplorable conditions that made it almost impossible to perform his job.

15.     As a further direct and proximate result of the negligence of the Defendants and each of them the Plaintiff was touched, groped, grabbed and treated as if he was less than human.

16.     As a further direct and proximate  result of the negligence of the Defendants and each of them Plaintiff was forced to remove the material from the work place only to be subjected to more severe conduct directed towards him from his supervisors and collages.

17.     As a further direct and proximate result of Defendants negligence Plaintiff could not go to any place within the office, bath room, vault, or armored trucks where he was not

4

EXHIBIT 1                                                    10

1  subjected to some form of inappropriate material or conduct.

2  18.    As a further direct and proximate result of the negligence of the Defendants and

3  each of them, Plaintiff was labeled as a homosexual.

4  19.    As a further direct and proximate result of the negligence of the Defendants and

5  each of them, Plaintiff has suffered and continues to suffer damages consisting of

6  emotional distress, loss of his employment income and benefits, loss of his career and loss

7  of his reputation. Plaintiff requests leave to amend this complaint to state the amount of

8  damages in accordance with proof at trial.

### SECOND CAUSE OF ACTION

#### (Civil Battery/Assault)

20.    Plaintiff realleges and incorporates by reference Paragraph 1-19 as though fully set

forth herein.

22.    Plaintiff was employed by GARDA for almost 13 years. Defendants Stephen

Struck and Ron Richardson were his immediate supervisors. During the Plaintiffs

employment he was lawfully on the premises of GARDA as an employee. During his

employment the Plaintiff was grabbed, groped, touched, by the Defendants and each of

them. During other incidents he was told that . You're my bitch, his head was pushed

down towards the crotch of his supervisor. Additionally, during his employment hugged,

pushed, and shoved.

23.    In doing the acts as alleged defendants and each of them acted with the intent to

make a harmful contact with the Plaintiffs person, and/or to place the plaintiff in fear of

being physically harmed/humiliated. At no time did the Plaintiff consent to any of the

acts of Defendants.

24.    As a proximate result of the above mentioned acts of Defendants and each of them,

Plaintiff suffered humiliation, mental aguish and emotional and physical distress, in an

amount to be determined at the time of trial.

5

EXHIBIT 1                                          11

25.   The conduct of Defendants and each of them  was willful and malicious and was intended to oppress and cause injury to the Plaintiff, thereby warranting the assessment of punitive damages against the Defendants and each of them.

## THIRD CAUSE OF ACTION

### ((Negligent Infliction of Emotional Distress)

26.   Plaintiff realleges and incorporates by reference Paragraph 1-25 as though fully set forth herein.

27.   By virtue of the employment relationship between the parties, Defendants and each of them, owed a duty of care to the Plaintiff.

28.   Defendants knew or should have known that their failure to exercise due care would cause Plaintiff severe emotional distress.

29.   As a proximate result of the Defendants actions, Plaintiff suffered humiliation, mental anguish, emotional and physical distress in an amount to be proven at the time of trial.

## FOURTH  CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

30.   Plaintiff realleges and incorporates by reference Paragraph 1-29  as though fully set forth herein.

31.   Defendant's  by their actions intended to cause Plaintiff severe emotional distress. Defendants' conduct was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish, and emotional distress.

32.   Defendant's conduct against  Plaintiff in the unlawful touching, groping, the sexual comments, pornography, the homosexual remarks, etc.  The above mentioned conduct was done with the knowledge that Plaintiffs emotional distress  and suffering would thereby increase and was done with a wanton and reckless disregard of the consequences to Plaintiff.

33.   As a proximate result of the above mentioned acts Plaintiff suffered humiliation,

6

EXHIBIT 1                                                    12

mental aguish and emotional and physical distress, in an amount to be determined at the time of trial.

34.    Defendant's actions were willful and despicable and done with oppression, fraud, and malice towards Plaintiff, and done with conscience disregard of Plaintiffs rights. Plaintiff is thereby entitled to an award of punitive damages.

## FIFTH  CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

35.    Plaintiff realleges and incorporates herein by reference each and every allegation in Paragraph's 1 through 34  as though fully set forth herein.

36.    The employment contract between the Plaintiff and Defendants  contained an implied covenant of good faith and fair dealing by which the defendants, promised to give full cooperation to Plaintiff in his  performance under said contract and to refrain from doing any act which would prevent or impede the Plaintiff from performing all of the conditions of the contract and to refrain from doing any act that would prevent or impeded Plaintiff's enjoyment of the fruits and benefits of said contract.  Said covenant of good faith and fair dealing requires Defendants  to act  fairly, honestly,  and to reasonably perform the terms and conditions of said agreement.

37.    Said covenant of good faith and fair dealing inheres in every contract. The Defendants breached their duty  of good faith and fair dealing by treating and subjecting Plaintiff to conduct Plaintiff knew or should have known was illegal.  Additionally, Defendants and each of them treated Plaintiff in a horrible and demeaning manner. When the conduct was complained about Plaintiff was retaliated against and the behavior/conduct became increasing hostile and other employees were encouraged by the Defendants and each of them to participate in the deplorable treatment of the Plaintiff.

38.    The implied covenant of good faith and fair dealing between the parties obligates Defendants  to do nothing to injure the rights of the Plaintiff to receive the benefits of the

7

EXHIBIT 1                                                                13

1   employment contract and to refrain from carrying out any acts which because of the

2   conduct, manner or method by which it was carried out, would cause harm, undue

3   hardship or injury to the Plaintiff.

4   39.    As a result of the breach of the covenant of good faith and fair dealing by the

5   Defendants, it made it unbearable for plaintiff to perform his duties. He is disabled from

6   an accident while on the job with Garda and is essentially unemployable with any other

7   employer.

8   40.    As a further result of Defendants breach BARBERI has suffered and continues to

9   suffer substantial losses in earnings, and other benefits which would have been received

10   but for the Defendants breach. The full extent of such losses is not yet known Plaintiff

11   requests leave to amend this complaint to state the amount of damages in accordance with

12   proof at trial..

13

14 **WHEREBY,** Plaintiff prays judgment against Defendant's and each of them as follows:

15   1.    For general damages according to proof;

16   2.    For special damages according to proof;

17   3.    For cost of suit herein incurred, including attorneys fees;

18   5.    For punitive damages as to the second and fourth causes of action;

19   6.    For such other and further relief as the court may deem just and proper.

20

21

22 DATED: 3-1-10

23                                  ROBIN D. MONTES
                                   Attorney for the Plaintiff

24

25

26

27

28

8

EXHIBIT 1                           14

# EXHIBIT 2

**SUMMONS**
**(CITACION JUDICIAL)**

SUM-100

**NOTICE TO DEFENDANT:** Garda Cash Logistics, Stephen
**(AVISO AL DEMANDADO):** Struck, Ron Richardson and
Does 1-50

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NORTH COUNTY DIV...

2010 MAR -2  AM 9: 00

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

**YOU ARE BEING SUED BY PLAINTIFF:** Michael Barberi
**(LO ESTÁ DEMANDANDO EL DEMANDANTE):**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

CASE NUMBER:
(Número del Caso):
37-2010-00051661-CU-OE-NC

The name and address of the court is:
(El nombre y dirección de la corte es):
Superior Court
325 S. Melrose Dr
Same
Vista CA 92081

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):
Robin Montes
Law Office of Robin Montes
4751 Oceanside Blvd Ste. A
Oceanside CA 92056

DATE:                                    Clerk, by _____ I. Plasencia _____, Deputy
(Fecha)                                  (Secretario)                         (Adjunto)

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).

**NOTICE TO THE PERSON SERVED:** You are served

1. [ ] as an individual defendant.

2. [ ] as the person sued under the fictitious name of (specify):

3. [ ] on behalf of (specify):

    under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership) [ ] CCP 416.90 (authorized person)
           [ ] other (specify):

4. [ ] by personal delivery on (date):

[SEAL]

Page 1 of 1

Code of Civil Procedure §§ 412.20, 465

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal Solutions® Plus

EXHIBIT 2

15

# EXHIBIT 3

Orange

## LABOR AGREEMENT

THIS LABOR AGREEMENT, entered into this *1ST* day of *APRIL*, 2008, by and between AT SYSTEMS WEST, INC. as "Company" or "Company", and A.T. SYSTEM OF ORANGE ASSOCIATION, hereinafter designated as "Union", made and entered into for the purpose of fixing the scale of wages, schedule of hours and general rules and regulations affecting employees covered pursuant to the terms hereof.

### PREAMBLE

A.  It is the intention and purpose of the parties to improve labor relations among the Company, its employees and the Union, and to further the advancement of the armored car industry.

B.  Towards this end, it is the intention of the parties to set forth in this agreement, the rates of pay, hours of work and other conditions of employment, for all employees coming under the jurisdiction of the Union and covered by this agreement;  to provide procedures for the equitable adjustment of grievances; and to prevent lock-outs, strikes; work stoppages or any other interference with the operation of the Company during the life of the agreement.

C.  It is understood that the Company shall not unfairly coerce employees in the performance of their duties.

D.  Employees are required to conduct themselves in a professional manner, and to comply with generally understood principles of moral conduct, integrity and work ethics, at all times.

E.  It is with this understanding that this agreement is entered into between the Union, the Company, and its employees.

IN CONSIDERATION of the mutual promises and covenants herein set forth and contained, the parties hereto agree as follows:

## ARTICLE 1 - RECOGNITION:

The Company recognizes the Union as the exclusive representative for purposes of collective bargaining for all driver/messenger guards and vault driver/messengers employed by the Company at its facility located at 1602 West Orangegrove, Orange, California; exclusive of all office employees and all supervisor employees as defined in the National Labor Relations Act as amended.

1

EXHIBIT 3                                             16

ARTICLE 2 — BULLETIN BOARD, ACCESS AND SHOP STEWARDS:

(a)  <u>Shop Stewards</u> - Company recognizes the right of the Local Union to designate Stewards and alternates from the Company's seniority list.  The authority of the Stewards and alternates so designated shall be limited to and shall not exceed the following duties and activities:

(i)  The investigation and presentation of grievances to the Company or the designated Company representative in accordance with the collective bargaining agreement;

(ii) The transmission of such messages and information, which shall originate with and be authorized by, the Local Union or its officers provided such information and/or message:

(I)    Has been reduced to writing; or
(II)   If not reduced to writing, are of a routine nature and do not involve work stoppages, slowdowns, refusal to handle goods, or any other interference with the Company's business.

The Union agrees to these limitations upon the authorized Stewards and alternates.  The Union shall not be liable for unauthorized acts of the Stewards.

The Steward or the alternate shall be permitted reasonable time to investigate, present grievances and process grievances.  Where mutually agreed to by the Local Union and the Company, the Steward and/or the alternate may investigate grievances off the property or other than during their regular schedule.  The Company recognizes the right of the Steward and/or his or her alternate to be represented by another Steward or alternate should such Steward or alternate reasonably contemplate disciplinary action.

(b)  <u>Bulletin Board and Access</u> — Subject to prior notice and approval by the Company, the Company agrees that authorized union representatives will have access to designated areas of the Company's facility for the purpose of providing representation of bargaining unit members and the carrying out of other legitimate Union business.  It is understood that the Company will not unreasonably withhold visitation approval as contemplated herein.

The Company shall make suitable space available for a Union bulletin board.  Posting by the Union shall be confined to official Union business.  No posting will be done by the Union which will in any way interfere with the conduct of the Company's business.

2
EXHIBIT 3

17

ARTICLE 3 - SENIORITY:

(a)   The  first  one  hundred  and  eighty  (180)  days  of
employment  shall  be  the  introductory  evaluation  period.   An
employees  status  as  an  introductory  evaluation  employee  shall  be
extended  beyond  180  days  of  continuous  employment  in  the  event
that  an  employee  has  not  successfully  acquired  all  required
licenses  and/or  permits  necessary  for  the  job  provided  that
management  has  elected  to  continue  employment  pending  receipt  of
the  required  licensing.

(b)   (i)   An  employee  will  be  classified  as  a  "regular  full-
time"  employee  if,  and  only  if,  they  are  regularly  scheduled  (week
after  week)  to  work  forty  (40)  or  more  hours  per  work  week  and
they  are  available  to  work  such  a  schedule.

(ii)  An  employee  (a)  who  is  originally  hired  as  a  part-
time  employee,  and  (b)  who  remains  continuously  employed  and
available  to  work,  and  (c)  who  subsequently  becomes  a  "regular
full-time"  employee  shall  retain  his  or  her  original  hire  date
with  the  Company  for  purposes  of  eligibility  to  receive  the
following  benefits:   holiday  pay,  service  incentive,  health
insurance,  life  insurance,  retirement,  illness  reimbursement  and
wage  scale  application.

(c)   Promotions  and  assignments  of  employees  will  be  made
only  after  giving  due  consideration  to  seniority,  classification
and  ability  of  the  employee.   The  preceding  notwithstanding,  the
Company  shall  have  sole  discretion  to  designate  when  and  where  an
employee  who  is  actively  on  the  payroll  will  work.

(d)   All  extra  work  and  special  assignments  will  be
distributed  equally  among  all  regular  full-time  employees  on  a
rotating  basis,  as  nearly  as  it  is  practical.

(e)   When  adding  to  the  force  of  employees,  any  persons
previously  laid  off  shall  be  taken  back  in  accordance  with
classification,  ability  and  seniority.   The  Company  shall  be
privileged  to  decide  who  is  the  best  qualified  employee  to  fill
any  particular  employment  opening  provided  that  seniority  shall  be
determinative  where  the  Company  has  determined  that  employees  are
otherwise  equally  qualified,  and  the  Company  shall  notify
employees  of  a  renewed  employment  opportunity  at  their  last  known
address.   If  any  employee  fails  to  report  within  five  (5)  days
after  notification,  the  standing  as  an  employee  of  any  such  person
failing  to  report  within  five  (5)  days  shall  be  forfeited.

(f)   When  it  is  necessary  for  the  Company  to  reduce  the
number  of  regular  full-time  employees,  they  shall  be  laid  off
according  to  the  Company's  assessment  of  who  is  the  best-qualified
employee  after  considering  classification,  ability  and  seniority.
Lower  Company  seniority  shall  be  determinative  where  employees'
are  considered  equally  qualified  by  the  Company.   Those  regular

3

EXHIBIT 3

full-time employees not retained as full-time employees shall be given preference for part-time work at the same rates and conditions as exist for part-time employees.

(g)  Preference shall be given to employees with respect to leaves of absence and days off after giving due consideration to seniority, classifications and ability of employees.  The Company reserves the right to limit the number of persons off in any classification to avoid a disruption of its operation.

(h)  Seniority specifically refers to length of continuous service without a break.  Any break (as hereinafter defined) in continuity will cancel seniority theretofore accrued together with any obligations the Company might have to the employee, and seniority can be acquired after such break only by re-employment, in which case seniority will date from re-employment.  Break in continuity of service shall result from any of the following:  (1) Discharge;  (2) resignation;  (3) continued absence of six (6) months or more from work by involuntary act of the employee for any reason with the exception of an employee who is on worker's compensation disability, in which case the permitted period of absence shall be that which is permitted by law, and with the exception of an employee who is laid off for lack of work, in which case the permitted period of absence shall be one (1) year.

ARTICLE 4 - DISCHARGE AND DISCIPLINE:

(a)  New employees may be discharged at any time during the introductory evaluation period of one hundred and eighty (180) days.  Employees shall not have access to the grievance procedure during the introductory evaluation period.

(b)  After completion of the introductory evaluation period, no employee will be warned or suffer suspension or discharge, except for just cause and in accordance with the spirit and intent of Company policy.

(c)  The Company will administer a system of progressive discipline.  The primary purpose of said system is to deter and correct unacceptable behavior on the job.

(d)  Standards of acceptable behavior should be clearly defined and properly communicated to employees.  Forms of discipline shall be limited to verbal and written warnings, suspensions and discharge.

(e)  Rule violations, acts of negligence and other improper activities such as poor performance, especially when the result of negligence, insubordination, loafing, inattention or disregard of instructions, may also be cause for disciplinary action.

(f)  Repeated offenses generally result in progressively greater penalties.  By way of example a minor violation which

elicits a verbal warning for the first offense will usually draw a written warning on the second offense, suspension on the third offense and termination on the fourth.

(g) Penalties for a first offense may vary from a verbal warning to termination, depending on the seriousness of the offense. Regardless of length of employment or past performance, certain violations of security procedures, work rules, safety policies or common sense are so severe that termination may immediately follow a factual determination that there has been such a violation. Such violations include, but are not limited to:

(1) No call, no show – when an employee is scheduled to work he or she is required to give at least two hours notice when they are going to be unable to work their scheduled shift. There is no excuse except an intervening emergency or other unforeseeable circumstance.

(2) Consistent failure to complete work assignments per schedule. The Company and the Union shall jointly counsel any affected employee in order that fair notice of expectations is communicated.

(3) Cheating on the time clock in any way or manner which results in extra time which is not necessary to complete one's work assignment or recording time that is not valid.

(4) The use of unlawful drugs or alcohol on the job;

(5) Reporting for duty impaired by alcohol or drugs;

(6) Operating a vehicle for the Company while driving privileges are revoked or suspended by the State of issuance;

(7) Transporting unauthorized passengers or using a Company vehicle for personal use contrary to Company policy;

(8) Failure to report a vehicle accident, personal injury or other claim producing event immediately after knowledge thereof, and/or failure to cooperate in the investigation of such an event;

(9) Reckless, careless or willful and wanton behavior which leads to personal injury or a serious preventable accident;

(10) Involvement in a "serious" or "preventable" accident during the introductory evaluation period or a serious preventable accident after the introductory evaluation period;

(11) Failure to report suspicious actions of any person including fellow employees whether on duty or off duty;

(12) Failure to act reasonably in notifying the Company of any circumstance which could lead to or expose the Company and its personnel to a security risk;

(13) Falsification of Company records (as distinguished from error or mistake);

(14) Engaging in illegal activity while on or off duty;

(15) Proven dishonesty;

(16) Assault or battery related to employment;

(17) Gross insubordination.

(18) Acts of sexual harassment or unlawful discrimination.

(19) Improper use of Company provided property.

(20) Disqualification from carrying, or other legal inability to carry, a valid gun permit or license.

(21) Conduct including conduct involving a customer or a customer's employee(s) which is inappropriate to the work environment, which is illegal, or which exposes the Company to an unnecessary customer or employee relationship problem.

(h) All discipline will be in conformance with the spirit and intent of applicable laws and regulations. The Company will provide the employee with a copy of any disciplinary documents.

(i) Warning letters must be based upon just cause, be specific in nature, and clearly spell out the alleged violation of an employee. To be considered valid, a warning notice must be issued within ten (10) working days after the violation claimed by the Company, or the violation becomes known to the Company exclusive of time spent investigating a violation or incident.

(j) The Company will suspend or discharge an employee for just cause only. Unless covered by Section (g) above, no employees shall be discharged or suspended unless a warning letter has been given to said employee within the previous twenty-four (24) month period, wherein the facts forming the grounds for discipline have been clearly set forth. Such facts therein set forth need not be the same and similar type as those upon which the suspension or discharge is based.

(k) Discharge or suspension may be verbal; however, such action is to be followed by written notice to the employee. Generally, a suspension or discharge is to take place within ten (10) working days of the claimed violation becoming known to the Company exclusive of time spent investigating a violation or

incident.

(l)   If  the  Union  or  employee  is  dissatisfied  with  the
discharge,  suspension  or  other  disciplinary  action,  the  question
as  to  whether  the  employee  was  properly  discharged,  suspended  or
otherwise  disciplined  shall  be  reviewed  in  accordance  with  the
grievance  procedure  set  forth  in  this  Agreement.

(m)   Section  (g)  and  (j)  above  notwithstanding,  the  Company
shall  have  sole  discretion  and  privilege  whether  or  not  to
summarily  discipline,  including  suspension  or  termination,  or  both
for  inadequate  job  performance,  any  personnel  under  the  following
circumstances:   (i)   when  said  employees  are  unable  to  account  for
an  item  such  as  a  customer  deposit  or  change  order;  (ii)   when
said  employees  are  unable  to  account  for  missing  items  in  a
customer's  deposit  or  change  order  for  which  they  have  been
charged  with  custody  if  such  discrepancy  involves  a  seal  that  has
been  tampered  with  or  a  defective  container,  bag  or  box;  (iii)
when  an  employee  refuses  complete  cooperation  with  respect  to  a
loss  or  discrepancy  investigation  provided  that  concerning
reasonable  requests  employees  shall  not  be  obligated  to  submit  to
a  lie  detector  test  on  any  basis  other  than  as  a  volunteer.

## ARTICLE 5 - GRIEVANCE AND ARBITRATION:

(a)   A  grievance  is  defined  as  a  condition  that  exists  as  a
result  of  an  unsatisfactory  response  or  adjustment  or  failure  to
adjust  a  legitimate  controversy,  claim  or  dispute  by  an  employee,
shop  steward  or  the  Union  concerning  rates  of  pay,  entitlement  to
compensation,  benefits,  hours,  or  working  conditions  set  forth
herein,  including  without  limitation,  claims  of  harassment  or
discrimination  or  hostile  work  environment  in  any  form,  including
without  limitation,  any  claim  based  on  race,  sex,  religion,
national  origin,  ethnicity,  gender,  disability  or  perceived
disability,  or  age,  or  any  claim  of  retaliation  for  making  any
such  or  similar  claim,  or  the  interpretation  or  application  of
this  Agreement  or  any  agreement  made  supplementary  thereto,  or  any
claim  under  any  federal,  state  or  local  law,  statute  or  regulation
or  under  any  common  law  theory  whether  residing  in  contract,  tort
or  equity  or  any  other  claim  related  to  the  employment
relationship.

(b)   Any  grievance  shall  be  presented  in  writing  to  the
Company  either  by  the  employee  alone  or  with  a  Union
representative  as  the  employee  desires,  or  by  the  Union  within
fourteen  (14)  calendar  days  from  the  occurrence  or  knowledge  of
the  occurrence  giving  rise  to  this  grievance.

(c)   Upon  submission  of  a  grievance  the  Company  shall  have
fourteen  (14)  calendar  days  to  respond.  If  such  response  is  deemed
inadequate  by  the  Union,  then  the  Union  shall  have  fourteen  (14)
calendar  days  to  request  arbitration.  Prior  to  actual  submission
to  arbitration  a  management-union  meeting  shall  be  scheduled  to

attempt resolution of any dispute for which arbitration has been requested. If after such management-union meeting arbitration is still necessary because a legitimate as well as significant issue of contract application remains open, then both the Company and the Union shall prepare a written position statement for submission to the arbitrator.

(d)   The arbitrator shall be selected from a list of seven (7) provided by the Federal Mediation and Conciliation service within five (5) calendar days, excluding Saturdays, Sundays and holidays, after a panel has been presented to both parties. The selection from the list of seven (7) shall be accomplished by the parties alternatively striking one name from the list until one remains. The party striking first shall be decided by a flip of a coin.

The Union and the Company shall each pay one-half (1/2) of the fee charged by the arbitrator, the cost of the hearing room, the reporter's fee, per diem, and the original copy of the transcript for the arbitrator.

(e)   The arbitrator shall not have the right to amend, take away, modify, add to, change, or disregard any of the provisions of this Agreement. The decision of the arbitrator shall be final and binding upon the grievant and all parties to this Agreement; provided that, he/she shall have no power or authority to substitute his/her discretion for the Company's discretion in situations where the Company has retained sole discretion in this Agreement. No award may order back compensation for a period of more than four (4) months, unless specifically authorized by federal or state statute or law.

ARTICLE 6 - SCHEDULE OF HOURS:

(a)   Regular full-time employees shall be guaranteed forty (40) hours work or the equivalent thereof in pay in any five (5) days or less per work week, except when work is not available because of circumstances beyond the control of the Company (power failure, Acts of God, etc.) which necessitate a shutdown of all or a portion of the Company's operation. The regular work week shall be Sunday through Saturday. The Company has agreed to schedule as many employees as possible with flex hours for the purpose of allowing such employees the opportunity to work their 40 hour guarantee or more in less than a five (5) day work week allowing for more days off during the week. The Company shall designate the days on which an employee will work, and shall be privileged, but not obligated to work such employee in excess of the number of hours guaranteed per week.

(b)   (i)   Employees shall not be scheduled for a daily work shift in excess of ten (10) hours per work day, however, it is recognized that due to demands on any given work day an employee may be required to be on the clock in excess of ten (10) hours on

a work day. Further, employees on a five (5) day, forty (40) hour work schedule who are required to work a seventh (7th) consecutive day shall be paid time and one-half for all hours worked on said seventh (7th) day and shall be guaranteed six (6) hours, and employees on a four (4) day, forty (40) hour work schedule who are required to work on a sixth (6th) or (7th) consecutive day shall be paid time and one-half for all hours worked on said sixth (6th) or seventh (7th) day and shall be guaranteed six (6) hours.

(ii) Employees on a five (5) day, forty (40) hour work schedule who work a sixth (6th) consecutive day shall be guaranteed eight (8) hours for said sixth (6th) consecutive day. Employees on a four (4) day, forty (40) hour work schedule who work a fifth (5th) consecutive day shall be guaranteed eight (8) hours for said fifth (5th) consecutive day.

(c) There will be a four (4) hour guarantee for regular full-time employees for any night work where an employee is called back. This "call back" guarantee does not apply where an employee remains continuously on the clock from their original starting time.

(d) The Company shall have sole discretion to schedule vault crews, truck crews and street routes. The Company and the Union are and have been aware of California Labor Code Section 226.7(a) and Wage Order No. 9. The Union and its employee members have elected to exercise their rights under federal law as embodied in the Taft Hartley Act, etc., et al., to negotiate terms and conditions for employment, including health and welfare issues. The Company and bargaining unit members have participated in multiple collective bargaining agreements dating back well in excess of 10 years wherein the bargaining unit members had repeatedly requested and relied on the ability to work through a paid lunch period and be guaranteed a paid 40 hours in one workweek for the express purpose of having more time to devote to family issues by being able to leave later for or depart earlier from work without financial penalty. It is the express belief of the Union that itself along with its employee members are in a better position to determine matters affecting work hours, health and welfare, as well as what is beneficial to their families where there is clearly no demonstrable overriding public interest safety issue. The law of California allows employees to waive in writing their right to an off duty meal period as well as to do so by means of a collective bargaining agreement. Consistent with the preceding, the vault crew and street crews will be scheduled without a designated meal period thus employees will not be docked for same. The Union expressly authorizes the Company to enforce a non-paid meal period during the work day with respect to employees who do not sign a written waiver, which waiver shall be revocable at any time by the Union member. On days of eight (8) hours or longer, employees will be allowed two (2) rest stops daily, not to exceed ten (10) minutes each, one in the a.m. and one in the p.m. No rest stops shall be allowed after 3:00 p.m. or during

performance of any special work or where high liabilities are involved or during the performance of any pickup or delivery.

(e)   Work time shall be computed continuously from the employee's start time until he/she is released, lunch period excluded, except as provided in subpart 6(d) above.

(f)   It is understood that any employee directed to report for work at a certain starting time shall be paid beginning from such start time until relieved from duty.   Employees are not required to begin their work day prior to the designated start time; and consistent with such fact, employees are not permitted to clock in on their time card prior to the established start time.

(g)   Part-time employees shall be guaranteed eight (8) hours of work or the equivalent thereof in pay at their straight time hourly rate for each daily call to work.

(h)   All employees shall be required to punch in and out on the Company's time clock. All pay computations shall be based on such time clock reading which will be measured in tenths of an hour.

ARTICLE 7 - HOLIDAYS:

(a)   During the term of this Agreement, a total of seven (7) days shall be observed as holidays during each calendar year. Said seven (7) days to be observed shall be as follows:

| New Year's Day | Thanksgiving Day |
| Memorial Day | Christmas Day |
| Fourth of July | Employee's Birthday |
| Labor Day | |

(b)   Regular full-time employees after completing their introductory evaluation period shall be entitled to eight (8) hours straight time pay for the above holidays although no work is performed provided that such employees work, or are available to work, the regular scheduled work day preceding and following any given holiday.

(c)   Any regular full-time employee who is required to work and does work any of the above holidays shall be paid his/her straight time hourly rate for each hour worked in addition to any holiday pay he or she may be entitled to, and such employee shall be guaranteed eight (8) hours for each such call to work.   Time actually worked on a holiday shall be counted towards an employees weekly total for the purpose of calculating payment of an overtime premium, however, time paid for as holiday pay shall not be considered when determining payment of an overtime premium.

(d)   A volunteer list will be posted at least two (2) weeks

10

EXHIBIT 3

25

in advance of any holiday for those employees who wish to work the holiday. Preference on a seniority basis will be given to those volunteering for holiday work.  If sufficient employees do not volunteer for holiday work, selections will be made from the inverse seniority list by classification on a rotating basis for such holiday work; provided that, new employees are not subject to being drafted during the introductory evaluation period.

(e)  Part-time personnel do not receive holiday pay; however, if a part-time employee does work any of the above holidays, said employee shall be paid one and a half (1 ½) times his/her straight time hourly rate for each hour worked, and such employee shall be guaranteed six (6) hours for each such call to work.

(f)  Employees on disability or extended sick leave are not entitled to pay for holidays which occur during such period of disability or leave.

ARTICLE 8 - VACATION:

(a)  All regular full-time employees are eligible for paid vacation after one (1) year of employment pursuant to the following schedule:

| | |
|---|---|
| After one (1) year | 80.0 hours |
| After six (6) years | 120.0 hours |
| After eleven (11) years | 160.0 hours |

Note 1:  There is no pro rata benefit for new employees who complete less than twelve (12) months of continuous service.

(b)  All hours will be computed at straight time rate and will include the crew leader premium if applicable.  These hours will be paid as follows:

(i)  An employee must take his or her paid vacation time during the twelve (12) months immediately following completion of his or her anniversary year.

(ii)  Paid vacation time off must be taken in one week (40 hour) increments.  There are to be no exceptions.

(iii)Any earned but unused vacation time (hours) from the previous year's service will be paid the first payroll following the employee's next employment anniversary date.

(c)  In order to receive this benefit an employee must be actively on the payroll when the payment is due as this benefit does not apply to employees off on extended leave. Consistent with the Family Medical Leave Act, extended leave shall be defined as any period of absence in excess of twelve (12) weeks for any reason.

(d) Employees shall have the right to schedule paid vacation leave of absence upon mutual agreement between the employees and the Company. The Company reserves the right to limit the number of employees off so as not to disrupt its operation. Selection of time off will be governed by seniority.

(e) Part-time employees do not earn vacation benefits as described above.

(f) When one of the recognized holidays set forth in Article 8 hereof falls within an employee's paid vacation leave period, such employee shall receive eight (8) hours of pay for such holiday.

ARTICLE 9 - BONDS, UNIFORMS, EQUIPMENT AND LICENSES:

(a) The Company will furnish Company issue uniforms, cap, ammunition and identification cards and badges. The Company will provide new uniform pants and shirts when such new uniforms are necessary. As a material consideration for the wages and benefits herein provided for, the employees shall be expected to pay the cost of cleaning their uniforms and shall keep same in good appearance at all times. The Company will use due diligence in seeing that the equipment is kept clean, and the employees will likewise do their share towards achieving cleanliness of the equipment.

(b) All permits, licenses or physical health certificates required by any State or Federal agency for armored car personnel whether affecting operation of the armored truck or the carrying of a weapon must be obtained by the employee, and at the employee's expense, before such employee goes to work and shall be maintained on an annual basis by the employee. The Company will reimburse employees 100 percent of the cost associated with obtaining any permit, license or physical health certificate which is required as a condition of employment provided the employee completes the introductory evaluation period and the employee submits an appropriate receipt for any such expense. Additionally, the Company will reimburse employees 100 percent of the cost of renewing any permit, license or physical health certificate which is required as a condition of employment provided the employee renews prior to expiration and presents the Company with an appropriate expense receipt.

(c) An employee shall not be required to deposit a cash bond.

(d) The Company shall be entitled to deduct from an employee's final paycheck the cost of the uniform and any other Company property supplied to an employee if such property is not returned at the employee's termination of employment.

12

EXHIBIT 3                                    27

(e)  In the event that an employee desires to wear a bullet resistant vest and/or vest cover on the job, such employee shall be required to request in writing that he/she be provided with same.   The Company agrees to provide such a vest within a reasonable time following a written request and the Company will replace said vest when same is determined to be in poor working condition through ordinary use and wear over time.   The Company will purchase the vest.  The vest will remain the property of the Company and shall be returned upon termination of employment.

(f)  In the event an employee has his/her personal firearm stolen by virtue of a felonious assault while on duty and while acting in the course and scope of his/her employment, the Company will replace said firearm as soon as practical at no charge to the employee.

ARTICLE 10 - HEALTH AND WELFARE:

(a)  The Company agrees that all regular full-time employees will be enrolled in a Company provided or sponsored health insurance program, which is at the least equal to that provided or sponsored for local management.

(b)  Health care coverage is available for all regular full-time employees the first day of the next month following completion of ninety (90) days of continuous employment, single or family benefit, provided that, a new employee must secure all required licenses and permits as a condition for benefit eligibility.

(c)  Eligible employees shall be required to contribute towards the cost of medical plans through payroll deductions.

(d)  **Leave** – Consistent with the Family Medical Leave Act the Company will continue contributions up to 12 weeks of a medical emergency leave provided the employee also makes his or her contribution as provided by law.  An employee who is off work for any reason for more than thirty (30) calendar days shall not be eligible for Company contributions the 1st day of the month following the expiration of the thirty (30) day period described herein.  Employees who wish to continue coverage shall be eligible to continue coverage at their own expense at the same premium rate paid by the Company consistent with the dictates of C.O.B.R.A. assuming such employees act in a timely manner.

An employee who is off work for any reason for more than thirty (30) calendar days shall not be eligible for Company contributions under this Article until the employee returns to active duty and completes a ninety (90) day waiting period, except where the Family Leave Act or the Uniformed Services Employment and Reemployment Rights Act of 1994, as amended is involved in which case the rules associated with said acts shall be controlling.  Employees who are entitled to dependent and family

13

EXHIBIT 3                                                   28

coverage shall also be eligible for such coverage after completing a ninety (90) day waiting period. An employee who returns to active duty for five or less work days after being off duty for thirty (30) or more calendar days, and again goes off work for five or more consecutive work days, shall be deemed to have been on a continuous leave of absence for the purpose of this Article.

ARTICLE 11 - ILLNESS REIMBURSEMENT:

(a) Illness reimbursement is to be paid to regular full-time employees after one (1) year of employment with the Company; and thereafter, following the employees annual employment anniversary. The first pay period following an employees employment anniversary he or she is to receive additional pay equal to a maximum of forty (40) straight time hours as unused illness reimbursement. Employees who miss three (3) or more consecutive days of work due to bona fide illness may elect to cash in up to sixteen (16) hours of their illness reimbursement prior to their employment anniversary. Employees who miss five (5) or more consecutive days of work due to bona fide illness may elect to cash in up to thirty-two (32) hours of their illness reimbursement prior to their employment anniversary. In order to receive this benefit an employee must have worked a minimum of nine (9) months during his/her employment year and must be actively on the payroll and at work when the payment is due as this benefit does not vest on a pro-rata basis or apply to employees off on extended disability leave.

(b) (i) Regular full-time employees injured on the job are not to be supplemented, except those employees who receive a demonstrably serious physical injury as opposed to an emotional or psychological injury, by virtue of a felonious assault from an outside source while they are engaged in activities consistent with the scope and course of their employment. Employees so injured on the job will be supplemented until released by a doctor, not to exceed one month. (Such supplement is to be equal to the difference between Workers' Compensation benefits and the employee's base pay.)

(ii) Regular part-time employees do not earn illness reimbursement benefits hereunder except those employees who receive a demonstrably serious physical injury as opposed to an emotional or psychological injury, by virtue of a felonious assault from an outside source while they are engaged in activities consistent with the scope and course of their employment. Employees so injured on the job will be supplemented until released by a doctor, not to exceed one month. (Such supplement is to equal the difference between Workers' Compensation disability benefits and the employee's average monthly base pay with the Company for the previous six (6) months.

Well Days. In addition to the payments outlined in subpart (a) above, regular full-time employees only shall be eligible to

14

EXHIBIT 3                                              29

receive an additional thirty-two (32) hours of straight time pay as illness reimbursement as outlined in subpart (a) above the first pay period following an employees' employment anniversary, provided such employees have not missed any scheduled days of work, or been tardy reporting to work on an unexcused basis during the preceding twelve (12) month period.  For each scheduled day of work missed, as well as for each unexcused tardy reporting to work, an employee shall forfeit (lose) eight (8) hours of well day pay as described above.

## ARTICLE 12 - LIFE INSURANCE:

Upon completion of program eligibility requirements, the Company will provide employees with a life insurance benefit equal to approximately one times an employees annualized base rate of pay.   In the event of an accidental death this benefit will provide approximately two times an employees annualized base rate of pay subject to standard exclusions, including but not limited to activities such as skydiving.

## ARTICLE 13 - RETIREMENT:

All employees will be eligible to enroll, consistent with plan terms, in a Company sponsored retirement program which is at least equal to that provided for local management.

## ARTICLE 14 - SAFETY:

(a)  The Company shall not require employees to take any vehicle out on the streets or highways that is not in a safe operating condition or equipped with the safety appliances prescribed by law. It shall not be a violation of this Agreement when employees refuse to operate such equipment when such refusal is justified.

(b)  Employees shall immediately or at the end of their shift report all defects concerning vehicles. The reports shall be made on a suitable form furnished by the Company and shall be made in multiple copies, one copy to be retained in the vehicle. Failure to make out reports may subject the employee to discipline.

(c)  The Company will not ask or require any driver to take out equipment that has been reported by any other driver as being in an unsafe operating condition until same has been approved as safe by the Company.

## ARTICLE 15 - TRAFFIC VIOLATIONS:

(a)  No driver shall be required to violate traffic laws or loading regulations.  If a driver is issued a traffic ticket or citation for parking violations made in accordance with instructions from the Company, the Company shall be responsible

for the payment of such citation. Traffic tickets or citations issued to the employee must be submitted to the Company within forty-eight (48) hours excluding weekends and holidays and if not so delivered, the Company shall not be responsible for the payment thereof.

(b)   Moving violations shall be the sole responsibility of the employee.

## ARTICLE 16 - EQUAL EMPLOYMENT OPPORTUNITY:

Company policy is that there shall be no discrimination in referrals for employment, recruiting, hiring, promotions, compensation and supplementary benefits with respect to race, ancestry, color, religion, national origin, age (over 40), sex, disability/physical handicap (including AIDS), marital status, or cancer-related medical condition(s) for all classifications of employees.

## ARTICLE 17 - STRIKES AND LOCKOUTS:

During the term of this Agreement the Union agrees that there shall be no strikes, sympathy strikes, work slowdown or other forms of work stoppage and the Company agrees that there shall be no lockouts. It is also understood and agreed that no pickets whether at the Company's place of business or at the place of business of Company's customers shall be honored or otherwise recognized during the term of this Agreement.

## ARTICLE 18 - ACCIDENT INCENTIVE (OUTSIDE OPERATIONS):

(a)   Beginning with the fiscal year December 2006 - November 2007, the Company has agreed to pay the following incentives to truck and vault employees who work out on the street per fiscal year, to wit:

(i)   Full-time employees - $500.00 per fiscal year provided the employee is actively on the payroll at the time payment is due and the employee worked at least nine (9) months during the fiscal year.

(ii)   Part-time employees - $250.00 per fiscal year provided the employee is actively on the payroll at the time payment is due and the employee was available to work at least nine (9) months during the fiscal year and the employee worked a minimum 60 days during the fiscal year.

(b)   To be eligible for a full cash incentive, employees must not have had a preventable vehicle accident or a "lost-time" job injury. Each preventable vehicle accident or "lost time" job injury will result in a $250.00 reduction of the fiscal year incentive award.

16

EXHIBIT 3                                                    31

(c)   For full-time employees only, the accident incentive referenced above in Section 18(a) will be increased to $750.00 provided that such employee has been accident free for ten (10) consecutive years at the time payment is due.  Said payment shall continue at the higher level for any employee who meets the criteria on a continuing basis.

(d)   The accident incentive as described above shall be paid by separate check to the employee the first payroll period following November 30.

ARTICLE 19 - FUNERAL LEAVE:

(a)   In the event an employee experiences the unfortunate circumstance of a death in his or her family said employee shall be entitled to receive a funeral leave of absence as follows upon request:

(i)   Three (3) days leave where the deceased is an employee's current spouse, natural or adopted mother or father; natural or adopted son or daughter, natural or adopted brother or sister.

(ii)   Two (2) days leave where the deceased is an employee's step-son or daughter by the employee's current spouse, natural or adopted grandparent or grandchild, or natural or adopted parent of current spouse.

(iii) A one (1) day leave where the deceased is an employee's natural or adopted aunt or uncle, natural or adopted first cousin, natural or adopted niece or nephew, ex-spouse provided their marriage produced natural or adopted children, step-brother or sister.

(b)   The company will pay employees a bereavement supplement equal to eight (8) hours straight time pay including crew leader premium if applicable for each day an employee is absent from work on funeral leave as described in Article 15 (a) above.  This supplement applies to regular full-time employees only.

ARTICLE 20 - JURY DUTY:

Due to the demands and requirements of the Company's business and our industry in general, the Company does not supplement employees if they are required to actually serve on jury duty; except that, the Company will pay an employee who is required to report for jury duty the difference between his or her one (1) day jury duty fee and eight (8) hours pay at the employee's straight time hourly rate including crew leader premium, if applicable. This benefit applies to regular full-time employees only.

ARTICLE 21 - MILITARY LEAVE

17

EXHIBIT 3                                                        32

(a)  Company policy and practice is to comply with the rules and regulations associated with military service obligations of reservists and employees who may be called to active duty. Additionally, the Company will supplement employees when on active duty status for a period of not more than two (2) weeks every twelve (12) months; provided that, the subject employee is obligated or required to serve as differentiated from the situation where an employee has elected to volunteer for the service duty.

(b)  The supplement referenced above shall be a payment equal to the difference between what the employee would have earned working his or her regular work schedule and what the employee received as gross pay from the military.  This supplement applies to regular full-time employees only.

## ARTICLE 22 - TRAINING:

(a)  Both the Company and the Union agree that training is useful towards the proper development of qualified armored car personnel. Therefore, the Company and the Union have agreed to the following:

(i) The Company is to schedule a series of instruction and testing sessions which new employees must attend as part of their introductory evaluation period as well as a condition of completing their introductory evaluation period.

(ii) Employees will be scheduled for periodic instruction and testing sessions as well as refresher sessions on a scheduled day off or after normal work hours.  Hours spent at such sessions are not to be counted as part of the regular work week, however, employees shall receive training pay equal to their straight time hourly rate for all hours spent participating in instruction and/or refresher training sessions.

(b)  Street Route Training Pay – Crew leaders only are eligible to receive supplemental new hire training pay as follows:

(i) $300 supplemental pay provided the following criteria are complied with -- the crew leader trainer has trained a new hire for a period of four (4) complete work weeks followed by the new hire successfully achieving a passing grade by a Company Management/Crew Leader approved written knowledge exam and by the new hire successfully passing a Company Management/Crew Leader approved physical agility test.

(ii) $200 supplemental pay in the event that the crew leader trainer and local management agree that the new hire being trained is not a candidate for continued employment after three (3) or more complete work weeks of training.

18

EXHIBIT 3                                      33

(c)   Crew leader trainers will be selected by management and management shall have sole discretion with respect to who may be designated as a Crew Leader Trainer.

ARTICLE 23 - COMPENSATION

Minimum base rate scale for all full-time and part-time employees:

|  | *April 2008 | *Sept 2009 |
|---|---|---|
| Start | $12.50/hr | $13.00/hr |
| After 120 Days** | $13.15/hr | $13.50/hr |
| After 1 Year | $13.65/hr | $14.00/hr |
| After 2 Years | $14.10/hr | $14.50/hr |
| After 40 Months | $14.75/hr | $15.25/hr |
| After 56 Months | $15.45/hr | $15.95/hr |
| After 6 Years | $16.05/hr | $16.60/hr |
| After 90 Months | $16.65/hr | $17.30/hr |
| After 9 Years | $17.15/hr | $17.90/hr |

*Effective as of the beginning date of the first payroll period in the month and year indicated.

**This increase will be withheld until a new employee has secured all required licenses and permits.

Service Bonus:

1.   Full-time employees who have remained continuously employed for a period of 10 years or more shall be entitled to one (1) personal holiday per employment year or the equivalent compensation in lieu thereof.

2.   Full-time employees who have remained continuously employed for a period of 15 years or more shall be entitled to two (2) personal holidays per employment year or the equivalent compensation in lieu thereof.

3.   Full-time employees who have for a period of 25 years or more remained continuously employed shall be entitled to five (5) personal holidays per contract year or the equivalent compensation in lieu thereof.

Note:   Any actual day taken off shall be arranged by mutual agreement between the employee and local management; provided that, an eligible employee shall request his/her personal day at least two (2) weeks in advance of the desired date.
Discretionary Compensation Payments:

The Company and the Union agree that the Company shall have sole discretion to pay employees compensation which exceeds or is in addition to the compensation and benefits herein called for if in the opinion of the Company said employees have experience,

19

EXHIBIT 3                                         34

skills and/or talents desired by the Company or employees have distinguished themselves in their service to and on behalf of the Company.

Crew Leader Premium:

(a)   Effective the first payroll in April 2008, the Company will pay a Crew Leader Premium of two dollars ($2.00) per hour to any employee designated as a "Crew Leader" in charge of an armored truck route on any work day. Effective with the first payroll in February 2009, the Crew Leader Premium will be raised to two dollars and twenty-five cents ($2.25) per hour.

(b)   Part-time employees cannot be designated as a regularly scheduled crew leader in charge of an armored car route; however, due to special circumstances on any given work day local management can designate a part-time employee as the crew leader on a specific run for that day.

(c)   Subject to the Company's sole discretion the qualifications for maintaining one's status as a crew leader may include the following:

1.   An employee obtaining and maintaining a commercial drivers license (CDL) on a current basis.

2.   An employee obtaining and maintaining all required guard and gun permits or licenses on a current basis.

3.   An employee obtaining and maintaining a DOT physical health certificate on a current basis.

4.   An employee assuming responsibility for and accomplishing completion of his or her assigned duties in an accurate manner as well as in conformance with Company and/or customer scheduling.

5.   An employee who is in good standing for performance and attendance as specified by the Company.

Red-Line:

Any employee receiving a work experience red-line rate of pay which is higher than that which is called for in the above scale shall continue to receive such higher rate of pay as long as such red-line rate exceeds the scale; thereafter, increases shall be consistent with the above scale.

Overtime Premium:

Employees who work in excess of fifty (50) hours in any one work week shall be compensated at one and a half (1 ½) times their

20

EXHIBIT 3                                             35

straight time hourly rate including crew leader premium, if applicable, for all hours worked in excess of fifty (50) hours, provided that their shall be no pyramiding or overlapping of time, and that should an overlapping occur, the Company shall be responsible for the single rate of pay only.

Pay Days

The Company shall regularly schedule at least one pay day no less often than twice every month.

ARTICLE 24 - TERM OF AGREEMENT:

Upon execution by the parties, this Agreement shall be effective as of April 1, 2008, and shall remain in full force and effect through midnight, May 31, 2011.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by the respective officers thereunto duly authorized this _1_ day of _APRIL_, 200_8_ .

FOR THE UNION:                          FOR THE COMPANY:

A.T. SYSTEMS OF                         AT SYSTEMS WEST, INC.
ORANGE ASSOCIATION

By:_____                      By: _____

Its: ORANGE EMPLOYEE REP.               Its: SENIOR VICE PRESIDENT

By:_____

Its: ORANGE EMPLOYEE REP.

By:_____

Its: ORANGE EMPLOYEE REP

BY:_____

ITS: ORANGE EMPLOYEE REP

21

EXHIBIT 3                                              36

1

**PROOF OF SERVICE**

2

**STATE OF CALIFORNIA, CITY AND COUNTY OF LOS ANGELES**

3

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 1900 Avenue of the Stars, 7th Floor, Los Angeles, California 90067.

4

5

On April 26, 2010 I served the document(s) described as **DEFENDANTS' NOTICE OF REMOVAL OF ACTION (28 U.S.C. SECTION 1441(B) (FEDERAL QUESTION)** in this action addressed as follows:

6

7

**Robin D. Montes**
**Law Offices of Robin D. Montes**
**4751 Oceanside Blvd., Ste. A**
**Oceanside, CA 92056**

8

9

☒   (BY MAIL) True and correct copies of the aforementioned document(s) were deposited, in a sealed envelope with postage thereon fully prepaid, with the U.S. Postal Service on that same day to be mailed via first class mail at Los Angeles, California. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

10

11

12

13

☐   (TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)) Pursuant to the controlling Rules, the aforementioned document(s) will be served by the court via NEF and proper link(s) to the document(s). On            , I checked the appropriate CM/ECF docket for this case or proceeding and determined that the aforementioned person(s) has/have consented to receive NEF transmission at the aforementioned electronic addresses.

14

15

16

17

☐   (BY FAX) The parties have consented in writing to receive service by facsimile transmission. On            , I transmitted the above-described document(s) by facsimile machine to the above-listed fax number(s). The transmission originated from facsimile phone number (310) 203-0567 and was reported as complete and without error. The facsimile machine properly issued a transmission report, a copy of which is attached.

18

19

20

☐   (BY ELECTRONIC SERVICE) On            , I transmitted the aforementioned document(s) as PDF attachments to the aforementioned electronic notification address(es). The transmission originated from my electronic notification address, which is            , and was reported as complete and without error.

21

22

23

Executed on April 26, 2010 at Los Angeles, California.

24

25

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

26

27

Jeri D. Bachelis-Asher

28

PRINTED ON
RECYCLED PAPER

6970318v1

**JS 44** (Rev. 12/07)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS
MICHAEL BARBERI

**DEFENDANTS**
GARDA CL WEST, INC. (erroneously sued as Garda Cash Logistics, Inc.), STEPHEN STRUCK, RON RICHARDSON

MAR 26 PM 4: 29

**(b)** County of Residence of First Listed Plaintiff **San Diego**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant **Los Angeles**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robin D. Montes
Law Office of Robin D. Montes
4751 Oceanside Blvd., Ste. A
Oceanside, CA 92056
(760) 945-3148

Attorneys (If Known)
Marta M. Fernandez
Travis M. Gemoets
Jon C. McNutt
Jeffer Mangels Butler & Marmaro
1900 Avenue of the Stars
Los Angeles, CA 90067
Telephone: (310) 203-8080

'10 CV 0880 WQH     POR

MTB
DEPTY

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☒ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 870 Taxes (U.S. Plaintiff | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | or Defendant) | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | 26 USC 7609 | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☐ 1 Original Proceeding | ☒ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

### VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Section 301 of the Labor Management Relations Act, 292 U.S.C. Section 85   29:401 C8

Brief description of cause:
Plaintiff's claims for negligence, NIED, IIED and battery are preempted by Section 301 of the LMRA.

### VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23      DEMAND $       CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY
(See instructions):    JUDGE ___    DOCKET NUMBER ___

DATE
April 26, 2010

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # 12819    AMOUNT $350    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___

CR    TB 04-26-10

American LegalNet, Inc.
www.FormsWorkflow.com

DUPLICATE

Court Name: USDC California Southern
Division: 3
Receipt Number: CAS012819
Cashier ID: mbain
Transaction Date: 04/26/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
-----------------------------------
CIVIL FILING FEE
 For: BARBERI V GARDA CL WEST
 Case/Party: D-CAS-3-10-CV-000880-001
 Amount:        $350.00
-----------------------------------
CHECK
 Check/Money Order Num: 88834
 Amt Tendered:  $350.00
-----------------------------------
Total Due:     $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.